1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEESON TERHORST LLP,                                  No. C 09-2718 JL

           Plaintiff,

    v.

PAUL THEIN,

           Defendant.
_____

BEESON TERHORST LLP,                                  No. C 09-2721 JL
                                                      **Related Cases**
           Plaintiff,
                                                      **ORDER OF REMAND**
    v.

LAUREL WARTLUFT,

           Defendant.
_____/

**I.      Introduction**

      All parties consented to this Court's jurisdiction pursuant to 28 U.S.C. §636(c).

Plaintiff's motion to remand to state court came on for hearing. Appearing for Plaintiff were

Jeffrey E. Beeson Healdsburg, California and Michael Anthony Terhorst , Sr., Sacramento,

California. Appearing for Defendants were Jeffrey Robbin Lamb , Law Office of Martin

Stanley, Santa Monica, California; Curtis L. Wenger, Salt Lake City, Utah. The Court

carefully considered the moving and opposing papers and the arguments of counsel and

1   the voluminous record in this case and hereby grants the motion. Both cases are hereby

2   remanded to Sonoma County Superior Court.

3       **II.     Background**

4       The two related actions arise out of the legal representation of Defendants Paul

5   Thein and Laurel Wartluft by Plaintiff, the law firm of Beeson Terhorst, LLP, and

6   Cross-Defendants Jeffrey Beeson, and Michael Terhorst. Starting in or about the early part

7   of 2004 and continuing through late 2005, Paul Thein and Laurel Wartluft were employed

8   by Feather River Community College in Quincy, California - - Thein as the Vice President of

9   Student Services and Institutional Development, Athletic Director, and as the Dean of

10  Students; Wartluft as the Head Women's Basketball Coach. Thein and Wartluft contend

11  they were fired because of their activities in connection with the school's compliance with

12  Title IX rules and regulations.

13      After Wartluft and Thein were released from their employment by Feather River

14  Community College, they contacted Beeson and Terhorst, who were then associated with

15  another law firm. Beeson and Terhorst subsequently established their own law firm in the

16  name of Beeson Terhorst, LLP, and continued to represent the Defendants.  They filed

17  approximately five separate actions including state personnel board proceedings, state

18  Superior Court actions, as well as actions in Federal Court based on whistleblower

19  retaliation.

20      The Defendants contend they paid Plaintiffs well over $1 million dollars. Plaintiff

21  alleges that Defendants still owe approximately $400,000.

22      On October 27, 2008, Plaintiff Beeson Terhorst LLP ("Plaintiff" or "BT") filed a

23  complaint in the Sonoma County Superior Court against Defendant Paul Thein

24  ("Defendant" or "Thein") and Laurel Wartluft ("Wartluft") for collection of unpaid attorneys

25  fees and costs. Thein and Wartluft proceeded to litigate in the state court, defending

26  against the civil action by their former attorneys. They filed one cross-complaint on

27  December 15, 2008, a second amended cross complaint on May 20, 2009, and proceeded

28  through case management conferences and trial setting on August 7, 2009.

**United States District Court**
For the Northern District of California

1    Plaintiff contends that Thein and Wartluft had sufficient information to assess

2    diversity jurisdiction from the initial pleading in October 2008. Defendant's failed to remove

3    within 30 days of service of the complaint. They also failed to remove within 30 days after

4    subsequent pleadings, most notably Thein and Wartluft's cross complaints, and "other

5    papers" all confirmed the basic objective information that diversity jurisdiction was

6    apparent. Thein's December 15, 2008 cross complaint both identified his Georgia

7    residence and specifically asserted that the Sonoma County Superior Court was "the

8    proper court" because of Plaintiff's presence in that county. The same was true with

9    Wartluft. She confirmed in her December 15, 2008 cross complaint both her Ohio residence

10    and that the Sonoma County Superior Court was the "proper court" because of Plaintiff's

11    presence in that county.

12    Accordingly, Plaintiff argues that the notice of removal was untimely under 28 U.S.C.

13    § 1446(b). Plaintiff also argues that Defendants have also waived any right to removal by

14    actively proceeding in the state court for eight months. Plaintiff contends that Defendants

15    only removed this action after an adverse decision from Judge Elaine Rushing of Sonoma

16    County Superior Court that Defendants had waived their right to a jury trial and that

17    success in their efforts to delay the August 7, 2009 scheduled trial was "unlikely."

18    Plaintiffs ask this Court to award their costs, attorney's fees and other appropriate

19    relief under 28 U.S.C. Section 1447(c). The Court denies this request, for the larger

20    purpose of returning this action expeditiously to state court, where it belongs, rather than

21    prolonging the controversy by potentially creating grounds for an interlocutory appeal.

22        When a remand order is accompanied by an order that decides a separate
23        substantive (nonjurisdictional) question, the § 1447(d) bar to review of the remand
          order does not preclude review of the separate substantive determination. The
24        substantive determination is an appealable final order under the collateral order
          doctrine.
     *California Practice Guide: Federal Ninth Circuit Civil Appellate Practice.*

25
          As the U.S. Court of Appeals for the Ninth Circuit has held:
26
          The removal statute directs district courts to remand any case removed from a state
27        court "[i]f at any time before final judgment it appears that the district court lacks
          subject matter jurisdiction." 28 U.S.C. § 1447(c). It goes on to provide, "An order
28        remanding a case to the State court from which it was removed is not reviewable on

ORDER OF REMAND                                                              Page 3 of  14

1    appeal or otherwise." Id. § 1447(d); Section 1447(d) prevents Chrysler from directly
2    challenging the district court's remand order on appeal. But Chrysler can challenge
     the district court's decision to impose sanctions and to award attorneys' fees. FN4
3    See 28 U.S.C. § 1291.

4    *Gibson v. Chrysler Corp.* 261 F.3d 927, 932 (9th Cir. 2001)(internal citation omitted)

5    **III.    Argument and Analysis**

6    **A.    Defendants misread the removal statute and ignore the second thirty
            day time limit for removal after notice of facts showing diversity.**

7    Defendants rely on an erroneous reading of the removal statute that they can timely

8    remove within one year regardless of when they learned of sufficient facts to justify

9    diversity jurisdiction. (Thein Opposition at 6; Wartluft Opposition at 4) They essentially

10   delete the second thirty day requirement for removal in 28 U.S.C. § 1446(b).

11   Section 1446(b) addresses the time within which an action must be removed and

12   when the clock begins to run. Pursuant to 28 U.S.C. § 1446(b), a defendant must file a

13   notice of removal within thirty days from the date he first objectively learns that an action is

14   removable. A defendant may learn that an action is removable in one of two ways: from

15   the face of the initial pleadings or by receipt "of a copy of an amended pleading, motion,

16   order or other paper from which it may first be ascertained that the case is one which is or

17   has become removable." 28 U.S.C. § 1446(b).

18   Section 1446(b) provides a second time limit of an additional thirty days if the

19   grounds for removal are not apparent from the complaint. The second thirty day limit begins

20   to run from the date Defendants receive "a copy of an amended pleading, motion, order or

21   other paper from which it may first be ascertained, that the case is or has become

22   removable. . ." 28 U.S.C. § 1446(b); *KDY v Hydroslotter, Inc.*, 2008 WL 4938281 (N.D.Cal.

23   2008) at 3 (Judge Conti). "Once defendant is on notice of removability, the [second]

24   thirty-day period begins to run." *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 697

25   (9th Cir. 2005); *KDY, Inc.* at p. 3.

26   In *Harris*, the Ninth Circuit addressed when the thirty-day removal clock is triggered

27   in situations where "it is unclear from the complaint whether the case is removable." 425

28   F.3d at 692-93. The court considered and rejected the proposition that a defendant has a

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   duty to investigate--in its own records or otherwise--a basis for removal when the pleading

2   does not disclose one on its face. It also rejected the suggestion that the defendant's

3   subjective knowledge or a "clue" in the complaint might trigger the thirty-day clock. Rather,

4   the court held that "notice of removability under § 1446(b) is determined through the four

5   corners of the applicable pleadings." Id. at 694. Thus, "[i]f no ground for removal is evident

6   in [the initial] pleading, the case is 'not removable' at that stage. In such a case, the notice

7   of removal may be filed within thirty days after the defendant receives 'an amended

8   pleading, motion, order or other paper' from which it can be ascertained from the face of

9   the document that removal is proper." Id. In other words, to give notice of removability, a

10  pleading or paper in the case must disclose a basis for removal within its four corners. In

11  the case at bar, Plaintiff argues that Defendants fail to show where the evidence of grounds

12  for removal lay within the four corners of any pleading filed within the thirty days prior to

13  removal.

14          Contrary to Defendants' argument in their Opposition papers and in the notices of

15  removal, there is no third, separate "one year time limit for removal" and the one year

16  outside limit in 1446(b) does not eliminate the second thirty day period. KDY, Inc. at p. 3.

17  Completely contrary to the statute, Defendants argue here "the second day thirty [sic]

18  period never commenced to run." (Thein Opposition at 8; Wartluft Opposition at 8) By

19  deleting this second thirty day period Defendants completely ignore the two determinative

20  questions which the statute and Harris pose: When and from which "other paper" from the

21  Plaintiff did Defendants receive notice of removability within the relevant time frame?

22  Defendants' opposition papers never address or answer either question and continue to

23  erroneously insist that 28 U.S.C. 1446(b) has a third, separate one year time limit on

24  removal without restriction and without regard to when Defendants had notice of

25  removability.

26          In short, here, as in KDY, Inc., the Defendants have identified no additional

27  information alerting them to federal jurisdiction besides the initial pleadings. "The only

28  conclusion the court can draw from this is that Plaintiff's initial complaint contained

1   sufficient information so that Defendants were on notice to the existence of diversity

2   jurisdiction." *KDY, Inc.* at p. 3. The identical conclusion can be drawn here.

3       **B.    The parties agree that facts about domicile are determinative for diversity of jurisdiction but Defendants ignore that they pled the California domicile of Plaintiff and its individual partners in their December 15, 2008 Cross-Complaints.**

6       After many pages insisting that the word "citizenship" must be found in the complaint

7   or other papers exchanged in the case, Defendants eventually concede that "citizenship"

8   need not be mentioned. "This is because most state court complaints are not clearly

9   removable on their face. They may allege the parties' residence but rarely allege the

10  parties' domicile (determinative for diversity purposes)." (Thein Opposition at 5; Wartluft

11  Opposition at 5), parenthetical in original) The parties agree that domicile is "determinative

12  for diversity purposes." Yet Defendants completely ignore that they admitted the California

13  domicile of the Plaintiff BT and its two partners in their December 15, 2008

14  cross-complaints.

15      Thein's December 15, 2008 cross-complaint identified his own Georgia residence on

16  the first page. (Cross-complaint at Exhibit 4 to Plaintiff's Motion) The cross-complaint at

17  paragraph 4 identified Plaintiff as a "Limited Liability Partnership" and also named as

18  individual defendants Plaintiff's two partners, Jeffrey Beeson and Michael Terhorst. (Id.)

19  Paragraph 7 then stated in reference to all three defendants that the Sonoma County

20  Superior Court " is the proper court because" Plaintiff and its two partners "entered into the

21  contract here", "lived here when the contract was entered into", "lives here now", and "the

22  contract was to be performed here". (*Id.* at paragraph 7) Thein himself signed this

23  cross-complaint which his attorney Wenger then served on Plaintiff at its California location.

24  (*Id.*)

25      Wartluft's December 15, 2008 cross-complaint also alleges that jurisdiction is proper

26  in Sonoma County Superior Court and makes exactly the same representations (Wartluft

27  Cross-Complaint at paragraph 7). She signed it and it was served on Plaintiff.

28

**United States District Court**
For the Northern District of California

1     These pleadings confirmed objective facts about Plaintiff's domicile and sufficient

2   facts to assess diversity jurisdiction. Domicile includes residence and when Defendants

3   pled that Plaintiff and its individual partners "lived" in California, together with the other

4   referenced contacts with California, this provided more than sufficient information to assess

5   domicile. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). While no single factor controls a

6   determination of domicile, the facts recited in Defendants' cross-complaints, the multiple

7   references to Plaintiff's California place of business, the exclusive California locale for

8   contract creation and performance of the contracted-for legal services, were all objective

9   facts indicative of a California domicile. *Id.* at 750; *Rubio v. Roman Catholic Bishop of*

10  *Sacramento,* 2007 WL 1576362 at 2 (E.D. Cal. May 31, 2007). Defendants failed to timely

11  remove within thirty days of their acknowledgment of these facts. 28.U.S.C. 1446(b).

12  **C.      Defendants were not representing themselves; they have been**
           **represented by counsel from the outset and hiring additional attorneys**
13         **does not justify untimely removal.**

14

15     Plaintiff argues that Thein and Wartluft present misleading and inaccurate

16  information in an effort to justify their untimely removal. Thein stated "prior to removal

17  Defendants Paul Thein and Laurel Wartluft were representing themselves." (Opposition at

18  2) The removal was June 19, 2009 and Plaintiff argues that Thein and Wartluft were

19  represented by counsel long before then and at least as of November 2008 in this case.

20  (See Terhorst Decl., ¶ 5 attached to Plaintiff's Motion) Plaintiff argues that one of the

21  reasons Sonoma County Superior Court Judge Elaine Rushing denied Thein's continued

22  attempt to delay the proceedings was Thein's gamesmanship about which attorneys

23  represented him. The reality, says Plaintiff,  has been that Thein has had three separate

24  law firms represent him - - the Law Office of Curtis Wenger, the Law Office of Martin

25  Stanley and the firm of Siegel and Yee. Yet none entered an appearance in the state court

26  proceeding so Thein could state, "I'm only representing myself" or "I'm still trying to retain

27  counsel" arguments to continue the delay tactics.

28

       Similarly, Defendant Wartluft claims that she was representing herself in state court

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   up until 10 days before the filing of the notice of removal (Opposition at 10). Plaintiff

2   disputes this contention and states that she too was actually represented by counsel,

3   despite the attorneys' not making any formal appearance.

4          Plaintiff argues that behind the scenes, Utah attorney Wenger had been involved

5   from the outset of this case, had engaged in every telephone call, every written

6   correspondence and every service of every pleadings on behalf of Thein. (Terhorst Decl., ¶

7   5 attached to Plaintiff's Motion) On December 17, 2008, Plaintiff confirmed in writing that

8   Wenger was acting as Thein's attorney so Plaintiff would know whom to serve with moving

9   papers and communicate with. (Letter attached to Terhorst Decl., ¶ 5, Exh. 5) After Wenger

10  repeatedly confirmed he represented Thein, Plaintiff dealt exclusively with attorney Wenger

11  throughout the litigation. (Terhorst Decl., ¶ 5). Indeed, it was attorney Wenger who served

12  Thein's December 15, 2008 cross-complaint with it's admission about Plaintiff and its

13  named partners all "living" and domiciled in Sonoma County. (Terhorst Decl., ¶ 4, Exhs. 3 &

14  4) Attorney Wenger obviously reviewed this before he mailed it from his Utah office and it is

15  highly probable, and a virtual certainty, that attorney Wenger drafted Thein and Wartluft's

16  crosscomplaints and other pleadings.

17         However, even after the appearance by the Stanley law firm, the same admissions

18  were made about Plaintiff's California domicile in Thein's May 20, 2009 amended

19  crosscomplaint served at Plaintiff's California place of business. (Terhorst Decl., ¶ 19).

20  What Plaintiff characterizes as Defendants' gamesmanship continued in the state court.

21  The stated reason at the April 30, 2009 Case Management Conference for more delay was

22  that the Stanley Law Firm was only making a "special appearance" and was still "reviewing"

23  the pleadings and case file. Attorney Wenger, who Plaintiff claims had seen every pleading

24  and correspondence from the outset of the case, was nowhere to be seen or heard as the

25  story line continued about the "pro se" party still searching for new counsel, so more delay

26  was needed. Meanwhile, behind the scenes, says Plaintiff, Thein and Wartluft were also

27  represented by yet a third California based law firm, Siegel and Yee, in the underlying

28  litigation.

Plaintiff argues that this covert representation of Defendants by counsel constitutes misleading gamesmanship about Thein and Wartluft representing themselves as justification for their untimely removal. Thein's Opposition misleadingly stated "He was representing himself in pro per in state court in Sonoma until eight days prior to removal of this case to Federal Court." Thein argues that "Defendant's counsel had just entered into this case as counsel of record . . . and upon review of the papers exchanged none of them revealed the citizenship of each of the partners of the partnership of Beeson Terhorst LLP." (Opposition at 3) Thein conveniently omitted attorney Wenger, who is admitted pro hac vice here on behalf of Thein, and who has represented Thein from the outset of these proceedings in state court. Every "paper" in this case from the outset was sent to, or came from Thein's attorney Wenger, including Thein's cross-complaint which admitted Plaintiff's California domicile.

Wartluft also asserts that she was representing herself when counsel reviewed documents and conducted an Internet search from which it "appeared" that Plaintiff law firm had two partners, both domiciled in California. (Opposition at 10-11).

This Court does not rely on the truth or falsity of whether Defendants were representing themselves to draw its conclusions whether removal was timely. This Court either has jurisdiction or it doesn't. It doesn't. Regardless of whether the attorneys had been involved all along, or have only recently come into Defendants' case, they still fail to identify any new information which triggers a new thirty-day period within which removal would be timely.

Thein and Wartluft simply ignored the central question: what in this so-called new "review of the papers of the papers exchanged" revealed information about diversity jurisdiction different from earlier information exchanged? If "none of the papers exchanged" in the entire case had any information about Plaintiff's citizenship then what in the 30 days before the June 19, 2009 removal provided that information? Why didn't Thein and Wartluft discover that information in October 2008 when the complaint was filed? Or in December 2008, when they filed their cross-complaints alleging that Sonoma County Superior Court

1    was the proper court? There are no answers to any of these questions provided in either

2    Thein or Wartluft's Oppositions.

3         This Court finds that there was no "new" information, just the same information

4    provided and known at the time the October 27, 2008 complaint was filed. Indeed, in their

5    Oppositions Thein and Wartluft do not even address, let alone refute, all of the pleadings

6    and papers showing the objective facts of Plaintiff's California domicile listed in Plaintiff's

7    Memorandum at ¶ 7, 9-10. In short, the removal was not triggered through notice of any

8    new information about removability.

9        **D.    The publicly available Internet sources from which Thein and Wartluft**

10          **claim to have discovered the facts supporting diversity provided no**
            **additional or different information from that provided in the initial**

11          **pleadings and subsequent papers exchanged in the case.**

12        Defendants rely on their purported Internet discovery to trigger notice of diversity for

13   purposes of removal. They allege that "After researching the legal citizenship of a Limited

14   Liability Partnership, researching the law firm through its own publication on the internet,

15   and researching the firm through the California State Bar, it appeared that the firm had two

16   partners, and that they were both citizens of California." (Thein Opposition at 11; Wartluft

17   Opposition at 11) Significantly, neither Defendant attaches the results of the internet

18   "search," the discovered firm website or the California State Bar website information.

19        Plaintiff's counsel argued convincingly at the hearing on the motion to remand that

20   neither of them publish their home addresses on either the California State Bar web site or

21   on the web site of their firm. This Court concludes that Defendants probably don't recite the

22   purported information they obtained because it is no different from that provided in the case

23   pleadings and papers. The firm's website provides the business locations of the firm's

24   attorneys which is the same information provided in every piece of paper, correspondence,

25   and pleading exchanged between the parties in the case. The California State Bar website

26   has no additional information or different information about domicile, citizenship or business

27   location from that presented in Plaintiff's initial pleading and subsequent pleadings and

28   papers in this case. Indeed, it has no information about the location of Plaintiff or its

     partners different than that on the firm's letterhead which was sent to Defendants with

United States District Court

For the Northern District of California

1  every paper from the cases' inception. Defendants also provide no explanation when this

2  information, available to the public on the Internet, was discovered or why it was not

3  discovered sooner by Thein, a former college Dean, or his other attorneys, or by Wartluft.

4  Determinative of the Motion to Remand, the Internet sources provide nothing about

5  jurisdictional facts for diversity different than that provided in the other papers as detailed at

6  Plaintiff's initial Memorandum in Support of Motion to Remand at ¶ 7, 9-10. Defendants

7  cannot negate their untimely removal and ignore the two thirty day time limits in 1446(b)

8  through a vague reference about finding something on the Internet which they neither

9  explained nor identified.

10          The alleged discovery on the Internet rings especially false when compared with the

11 circumstances of the previous representation by Plaintiff, uncontested by Defendants. As

12 discussed at the hearing on this motion, both attorneys in Plaintiff's law firm represented

13 Thein and Wartluft at a former law firm with which both were associated. They took their

14 clients with them when they formed their own firm, the Plaintiff in this case. Thein and

15 Wartluft participated personally in the litigation against their former employer, including

16 numerous visits to Plaintiff attorneys at their offices and their homes. Thein and Wartluft

17 were familiar with their lawyers; they knew where they lived.

18          Defendants' reliance on the unpublished case of *Kirkland* is puzzling. The holding in

19 that case in fact supports Plaintiff, in that Judge Patel ruled against a defendant, who, like

20 the Defendants in this case, removed a case in an untimely manner even though it knew

21 full well from the outset the facts which could have conferred federal jurisdiction. The court

22 rejected allegations of insufficient language in the complaint to support federal jurisdiction.

23 As Judge Patel found: "Defendant, however, cannot argue in good faith that it did not know

24 from the complaint that the amount in controversy would exceed the $50,000.00 minimum.

25 It was clear from the nature of the complaint, which alleged prevalent and egregious

26 unwanted sexual touching and language in a work setting, that damages would be

27 significant. *Kirkland v. Morton's of Chicago*  1996 WL 532118, *2  (N.D.Cal.,1996).

28 Similarly, in the case at bar, Defendants had worked closely with both their attorneys, Mr.

Beeson and Mr. Terhorst, throughout the previous litigation, at both the attorneys' homes

1  and their offices. They knew they were the only attorneys in their new firm, and that they

2  worked and lived in California.

3      **E.      Defendants admit that their hiring additional attorneys and the**
           **attorneys' "review" of papers in the case had nothing to do with**
4          **discovery of facts about diversity jurisdiction.**

5

6      Thein stated that "the first paper exchanged between the parties in this case

   asserting the complete diversity of citizenship of the parties was Defendant's removal

7  petition". (Thein's Opposition at 4). Wartluft makes the same assertion (Opposition at 4).

8  Apparently, Defendants ask this Court to conclude that their first notice of removability was

9  when they read their own removal petitions, relieving them of the second thirty day time

10 period in 1446(b). Defendants cite no case law for this theory of removal in which the facts

11 of diversity manifest themselves in the notice of removal and the party first discovers

12 diversity jurisdiction from reading his own notice of removal.

13     **F.      Plaintiff repeatedly communicated to Defendants that removal was both**
           **untimely and also for an improper purpose, to delay the state court trial.**
14

15     Thein's Opposition included the additional statement, which Plaintiff argues is both

16 false and misleading, that "Defendant's counsel then sent numerous correspondence to

17 this effect to Plaintiff in an attempt to obtain their position regarding whether removal was

18 appropriate. Plaintiff refused to engage in a discussion whether removal was appropriate."

19 (Thein Opposition at 3-4). Wartluft made the same statement (Wartluft Opposition at 4).

20 This, argues Plaintiff, is simply false. When Defendants advised Plaintiff of their intention to

21 remove the state court action to federal court, Plaintiff's attorneys immediately advised

22 attorneys Stanley and Wenger that removal of the action was untimely and a "ploy" for the

23 improper purpose of delaying the state court trial because they knew their pending motion

24 for a continuance would be denied. (Terhorst Decl., ¶ 8 attached to Plaintiff's motion).

25 Plaintiff also sent to attorney Stanley a letter regarding the untimely removal with the case

26 of *KDY, Inc. v. Hydroslotter Corp. supra*, from this district, refuting Thein's and Wartluft's

27 assertions that they had one year to remove regardless of when they learned the facts

28 supporting diversity jurisdiction. (Terhorst Decl., ¶10, Exh. 13).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    After Defendants' removal, Plaintiff continued correspondence with their attorneys

2    asking them to remand the case, because, *inter alia*, Defendants' cross-complaints and

3    numerous "other papers" in the case provided sufficient facts about diversity and Thein had

4    failed to remove within 30 days of the initial pleadings and the subsequent "other papers."

5    Defendants' attorneys insisted they had one year to file their removal and refused to agree

6    to a remand to state court. (Terhorst Decl., ¶11, attached to Plaintiff's motion and Exh. 14).

7    In short, Plaintiff argues it is simply false that "Plaintiff refused to engage in a discussion

8    whether removal was appropriate". (Thein Opposition at 3-4, Wartluft Opposition at 4).

9    **G.    Plaintiff denies that it filed any matters in state court after removal.**

10    Contrary to Thein's Opposition at 11, and Wartluft's Opposition at 11, Plaintiff

11    asserts that it did not file any matters in state court after removal of this case. Plaintiff

12    explains that in the Wartluft case Defendant failed to file its notice of removal in state court

13    until July 8, 2009. Up to that date, the state court continued to have at least concurrent

14    jurisdiction and Plaintiff continued to make filings in the Wartluft case in compliance with

15    state court deadlines and procedures.

16    **IV.    Conclusion**

17    Thein and Wartluft removed their cases after Superior Court Judge Rushing told

18    them she was "unlikely" to grant their motion for trial continuance. It was not a discovery of

19    new jurisdictional facts which led to Defendants' untimely removal, since Defendants fail to

20    demonstrate discovery of any new facts in a relevant time period which would justify

21    removal. For all of the above reasons, Plaintiff's Motion for Remand is granted. Both cases

22    are hereby remanded to Sonoma County Superior Court.

23    Plaintiff's motion for an award of costs and expenses including attorneys' fees, is

24    denied, as discussed above.

25

26

27

28

1        IT IS SO ORDERED.

2    DATED: August 3,   2009

3
                                                    _____
4                                                   James Larson
                                                    United States Magistrate Judge
5

6

7

8    G:\JLALL\CHAMBERS\CASES\CIVIL\09-2718\Order 5, 8, 14, 19.wpd

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California